UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAUL MARTEL,

    Plaintiff,

  v.

HEARST COMMUNICATIONS, INC.,

    Defendant.

No. C 19-02715 WHA

**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this individual wage-and-hour action, both parties move for summary judgment. For the reasons stated below, plaintiff's motion for summary judgment is **GRANTED.** Defendant's motion for summary judgment is **DENIED**.

**STATEMENT**

Plaintiff Paul Martel delivers newspapers for the *San Francisco Chronicle*. Defendant Hearst Communications, Inc. is a media company that, among other things, owns and manages the distribution of the *Chronicle* throughout Northern California. Plaintiff has been delivering the *Chronicle* since the 1980s, first, for the San Francisco Newspaper Agency and then for Hearst when it purchased the *Chronicle*. In 2008, however, plaintiff signed a new contract with Hearst and transitioned from a newspaper "carrier" role to a "dealer" role in which he gained more job responsibilities. He has signed each subsequent contract with Hearst since then (Martel Depo. at 14–17). Based on these job responsibilities and the terms of his contract,

plaintiff filed an initial complaint in May 2019 alleging defendant misclassified him as an independent contractor. He alleges eight violations under the California Labor Code, including Section 17200, and seeks declaratory judgment, compensatory damages, economic and/or special damages and/or liquidated damages (Compl. at 10–18). The Court held a case management conference in August 2019 where the undersigned emphasized the importance of properly disclosing damages under Rule 26 (Dkt. No. 38-2 at 6–7).

The parties have now filed cross-motions for summary judgment on the same issue — whether plaintiff has been properly classified as an independent contractor. This order follows full briefing and oral argument.

## ANALYSIS

**1.   MISCLASSIFICATION.**

The crux of this case is whether plaintiff has been properly classified as an independent contractor. There is no dispute that the *Borello* standard applies in determining the proper classification given the exemption of newspaper distribution from California Assembly Bill 5's adoption of the *Dynamex* standard.

**A.   CONTROL TEST.**

Under *Borello,* the principal test of an employment relationship is "[w]hether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341 (1989). There, the Supreme Court of California found harvesters to be employees of Borello given the control he had over their work. The harvesters only invested in their hand tools, worked on a piecework basis, and incurred no opportunity for profit or loss. Although Borello did not supervise the harvesters due to the simplicity of their work, he retained "pervasive control over the operation as a whole" — planting the crops, providing the sorting bins and boxes, transporting the crops, selling the crops, and maintaining documentation of the workers' proceeds.

There is no genuine dispute of material fact that plaintiff here is an employee under *Borello* because defendant controls the manner and means by which plaintiff delivers

newspapers. The contract signed by plaintiff requires him to "deliver a complete, fully assembled *San Francisco Chronicle*" in a "clean, dry, undamaged and readable condition" to subscribers in his designated delivery area no later than 6 a.m. Mondays through Saturdays and 7:30 a.m. on Sundays. Plaintiff must also assemble the newspaper and related items into a bagged package for delivery. The contract further provides that the newspapers will be made available to plaintiff at defendant's warehouse between 1 a.m. and 4 a.m. Mondays through Saturdays and between midnight and 5 a.m. on Sundays. Any failure to arrive at the pick-up location on time or deliver the newspapers on time could be deemed a breach of contract and plaintiff would have to pay the associated costs (*See e.g.,* Dkt. No. 38-2, Exh. E).

Following plaintiff's transition from a "carrier" role to a "dealer" role, defendant also assigned plaintiff additional delivery areas, making it impossible for him to complete all the deliveries within the time frame delineated by the contract without hiring out subcontractors. Plaintiff thus began paying Ardy Leenders as a subcontractor to deliver newspapers in these areas. Leenders had been delivering newspapers in those areas for defendant already prior to 2008 (Martel Depo. at 41, 53).

On a typical weekday, plaintiff will arrive at defendant's Oakland warehouse around 1 a.m. and check his mail to see if there are any changes to his route, which takes less than an hour. He will then prepare or load the newspapers for delivery and distribute them to his subcontractors, which can take up to an hour. He then completes the deliveries on his route, which takes approximately four hours (finishing around 6:30 a.m.), before ultimately driving home to monitor defendant's online delivery portal for service checks, redeliveries, and complaints. Although merely requiring a deliverer to deliver a readable newspaper in a timely manner to customers is not enough on its own to indicate employment, the time restrictions of when the newspaper is made available to plaintiff, the deadline to make the deliveries, the penalties of failure, and the supplemental tasks he must complete show that plaintiff has little freedom over his working hours or the way in which he completes his job (*id.* at 127–159).

As defendant argues, the terms of the face of this contract do provide plaintiff with certain freedoms such as choosing which vehicle to complete deliveries, choosing the order in

3

which to make deliveries, choosing where to sort and package the newspapers prior to delivery, and hiring or firing subcontractors without approval from defendant. In reality, however, there are crucial restrictions in the way plaintiff completes his job.

For example, plaintiff lacks control in the facilities and equipment he uses to completes his job. True, he pays for the primary tools necessary for work — a delivery vehicle and his sorting space — while defendant only provides some of the sorting supplies. His choice in vehicle is, however, dependent on his ability to afford a vehicle for deliveries separate from a vehicle for personal use. Plaintiff's sorting space in the warehouse is also not in his full control as he subleases it from defendant. There might not be an explicit requirement for defendant to sublet that space, but in practice there is little choice in the matter (Nichols Decl. ¶ 9). In choosing where to bag the newspapers, plaintiff's most reasonable and efficient option would be to use the place where defendant makes the newspapers available, as opposed to preparing them all in his vehicle (which he has done when it is not raining) or driving them to a separate location to sort and bag, which could make it more difficult to deliver the newspapers in a timely manner. Plaintiff's choices are thus, in practice, a function of the size of his route, weather, and financial situation — much of which is outside his control.

Defendant emphasizes the distinction between carriers and distributors, and relatedly, plaintiff's ability to freely subcontract out his work as an indication of its lack of control over plaintiff. Regardless of plaintiff's job title, the ability to subcontract is not dispositive of control. In *Borello,* the harvesters could assign their work to their family members, and they did so, yet the court still found Borello had control over them. 48 Cal. 3d at 348.

Even if the ability to subcontract were dispositive, defendant still maintains control. Our court of appeals has not provided guidance on this issue but the California Court of Appeal has alluded to it in *Antelope Valley Press v. Poizner.* 162 Cal. App. 4th 839, 856 (2008). There, the deliverers for Antelope Valley Press signed contracts that purportedly allowed them to "hire employees and substitutes," but in practice, greatly limited their ability to do so by only allowing subcontracting when the carrier deemed it necessary and only when using vehicles

4

under the carrier's control . This factor weighed in favor of finding the deliverers to be employees.

Plaintiff's ability to subcontract here is not so explicitly limited as the Antelope Valley Press deliverers, but defendant here still retains much control. True, plaintiff could have more freedom in determining when to deliver his newspapers or the route he takes if he subcontracts out a large portion of his delivery areas. It is also true that he could ostensibly hire whoever he wanted to complete the deliveries, not only when Hearst deems it necessary. But in practice, defendant does not provide plaintiff with much choice. After Hearst assigned additional delivery areas to defendant in 2008, his most reasonable option would be to keep on the deliverers who were already working that route as subcontractors, which is exactly what plaintiff has done. To maintain his pay, plaintiff has largely continued delivering newspapers in the same area he always has, and does not believe he would be able to find additional subcontractors to take on his work given the pay. Because of the size of plaintiff's assigned delivery area, his choice in hiring subcontractors is limited, which in effect, limits his working hours as well. Thus, Hearst does not merely control the results but the means and method by which plaintiff completes his work.

### B.   *SECONDARY FACTORS.*

While the "control" test is the most significant, the following factors may also be considered: (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee. *Borello*, 48 Cal. 3d 341. Other factors such as the tests developed by other

jurisdictions or regulations regarding employment may also be considered, but are not dispositive.

To further support his contention that the *Borello* test weighs in his favor, plaintiff has cited to *Antelope Valley*. This case is distinguishable from ours in the sense that Antelope Valley Press delineated many rules and placed strict restrictions on their deliverers. For example, Antelope Valley Press required their deliverers to bag publications using certain colors, made their deliverers responsible for procuring new subscribers, and imposed numerous financial penalties for failing to comply with the contract. The Antelope Valley Press deliverers' compensation also depended on unnegotiated financial terms. The restrictions here are not so demanding. There is also a genuine dispute of material fact as to whether defendant has some negotiating power in his contract (*Compare* Dkt. No. 53-2 and 41-6).

There are, however, some similarities between *Antelope Valley* and our case worth mentioning. In finding the deliverers to be employees, the California Court of Appeal noted that Antelope Valley Press's ability to discharge the deliverers without cause with a 30-day notice (a secondary factor) indicative of an employee-employer relationship. 162 Cal. App. 4th at 854. Plaintiff, here, can also be terminated unilaterally without cause with a 30-day notice (Dkt. No. 38-2, Exh. E). The court also found the simplicity of newspaper delivery to weigh in favor of a finding that deliverers were employees. *Antelope Valley,* 162 Cal. App. 4th at 855. The same applies here.

Additional secondary factors also weigh towards finding that plaintiff has been improperly classified as an independent contractor. For example, the length of time for service performance indicates plaintiff is an employee. Although he signs yearly contracts, similar to the *Borello* growers, plaintiff's relationship with Hearst is essentially permanent. Unlike a standalone construction contract or one-time research project, plaintiff has been continuously delivering newspapers for Hearst every day since the 1980s (Martel. Depo. at 19).

Furthermore, Hearst's primary business encompasses all steps of the publication process from production to distribution. The *Chronicle* holds itself out as a news organization that "reports on the news and publishes content in printed and electronic form" (Nichols Decl. ¶¶

2–3). Hearst accordingly employs reporters to create content (both for print and digital mediums). On the physical distribution side, Hearst employs individuals to print, package, and deliver newspapers to warehouses, as well as individuals who oversee circulation, and whose job includes developing a strategy for the delivery of physical newspapers (Nichols Depo. 164–165). On the digital side, when an employee publishes a news article on the *Chronicle*'s website, it is "distributed" to certain subscribers. It is unclear why an individual completing the physical version of this distribution would not be considered an employee. Plaintiff's delivery services are thus neither distinct nor separate from defendant's primary business.

There are some factors on the other side of the ledger, however, but they are not enough to outweigh the finding that there is no genuine dispute of material fact that defendant has improperly classified plaintiff as an independent contractor. *First,* as evidenced by the language in the contract (*e.g.* entitled "Contractor Home Delivery Agreement") as well as plaintiff's tax forms in which he refers to himself as a contractor, the parties did not believe they were creating an employer-employee relationship (Martel Depo. at 36). Newspapers have been historically delivered by independent contractors as well (Nichols Decl. ¶4). *Second,* the method of payment is also indicative of an independent contractor relationship as plaintiff is paid on a piecework basis instead of hourly (Dkt. No. 38-2, Exh. E). *See* Cal. Code. Regs. Tit. 22, § 44304-6(c)(2). *Third,* plaintiff's contract allows him, in response to a complaint, to either cure the breach of contract by redelivery or explain why a complaint is unfounded. These options are indicative of a contractor relationship as it means plaintiff is not explicitly required to monitor the complaints and rectify them. *Id.* at § 44304-6(c)(5). *Fourth*, Hearst does not exercise much supervision over plaintiff. No one checks in on him after each delivery, although this is largely due to the simplicity of the task, much like the harvesters in *Borello.*

Even with some dispute over facts and some secondary factors indicative of an independent contractor relationship, overall, the secondary factors still weigh in favor of the conclusion that defendant is an employee. Combined with the control defendant exercises, plaintiff has been improperly classified as an independent contractor and summary judgment is **GRANTED** in plaintiff's favor as to this issue.

7

### 2. DAMAGES.

Defendant has separately moved for summary judgment on the basis that plaintiff's amended initial disclosures on damages are insufficient under Rule 26(a). In particular, defendant takes issues with plaintiff's failure to provide calculations for each category of damages. In his amended disclosures, plaintiff listed his damages as the following:

- $321,028.51 in unpaid wages and $86,764.46 in liquidated damages;
- $121,470.25 in meal & rest break penalties;
- $100,958.67 in unreimbursed business costs and expenses;
- $4,000 in wage statement penalties; and
- $13,508.00 to date in reasonable attorneys' fees.

Plaintiff did not provide any additional information regarding damages in his amended disclosures (Dkt. No. 38-2, Exh. C).

Rule 26(a)(iii) requires that a party must provide:

> a computation of each category of damages claimed by the disclosing party — who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Because plaintiff did not provide specific calculations in his amended disclosures, he has violated Rule 26(a)(iii). He notes that he provided a spreadsheet with specific calculations to defense counsel during the parties' January 2020 mediation, and that he walked through these calculations verbally with defense counsel. This does not, however, excuse plaintiff's failure because Rule 26(a)(4) requires that all disclosures under Rule 26(a) must be "in writing, signed, and served." Moreover, statements made during mediation are supposed to be inadmissible.

Plaintiff has cited to *Aspect Systems Inc., v. Lam Research Corp.* in which our court of appeals, in an unpublished decision, affirmed a decision by the United States District Court for the District of Arizona to deny a motion in limine seeking to exclude damages at trial because the disclosing party had disclosed its calculations in a mediation memorandum. 404 F. App'x 136, 139 (9th Cir. 2010). *Lam* is not binding and is also distinguishable from our case. There,

8

the disclosing party had emailed damages calculations to the receiving party before mediation took place and then subsequently incorporated additional calculations into a mediation memorandum. In denying the motion in limine, the judge there specifically found it inappropriate to challenge that issue at the motion in limine stage instead of the summary judgment stage. Our plaintiff here did not email any calculations to defendant prior to the mediation nor did defendant wait to challenge this issue until the motion in limine stage. California also takes a much broader view of mediation confidentiality privileges than Arizona. *See Wolf v. Loring Ward Int'l, Ltd.*, 2019 WL 1922920, at *9 (Cal. Ct. App. Apr. 30, 2019). There is additionally no law stating oral statements made during mediation are sufficient to satisfy Rule 26 either.

There is no explicit guidance from our court of appeals in determining whether non-disclosure is justified or harmless, but courts in our district have considered the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F.Supp.2d 719, 733 (N.D.Cal. 2011) (Judge Edward Chen).

*First,* damages in this case are complex as plaintiff himself has admitted due to the piece-rate nature of the wages (Dkt. No. 38-2, Exh. B at 7:17–23). Plaintiff has still not properly provided the calculations under Rule 26 and it would be difficult for defendant to determine how plaintiff arrived at the lump-sum monetary amounts in the amended disclosures without these specific calculations or further information from plaintiff such as an expert report. Such a burden causes undue surprise and weighs in defendant's favor.

Plaintiff's spreadsheet and oral communications from the January 2020 mediation may have lessened some of this surprise, but he made these oral communications when he was still unsure of the accuracy of the damages (*See* Dkt. No. 38-2, Exh. B at 7:17–23). Plaintiff notes defendant's failure to bring up these deficient disclosures until now. It is, however, the disclosing party's burden to provide the proper disclosures. The receiving party has no duty to

remind the disclosing party, and any failure to do so does not mean there is no surprise in the evidence provided.

*Second,* the ability to the cure the default weighs in plaintiff's favor. The United States District Court for the Northern District of California has stated that no new jury trial for civil matters will be conducted through September 30, 2020, due to coronavirus. General Order 72-3. Trial in this matter is currently set to begin on July 20, but will be postponed for at least three months. This extension would accordingly allow plaintiff to rectify at least some of the surprise.

*Third,* for the same reasons as above, allowing the evidence (if rectified) would likely not disrupt trial as a three-month extension could provide plaintiff sufficient time to provide the damage calculations and for defendant to make the necessary preparations to address the calculations at trial.

*Fourth,* the evidence here is important as damages are an essential part of plaintiff's claim.

*Fifth,* in explaining his failure, plaintiff's counsel merely states that he "errored [sic] by failing to attach [his] Microsoft Excel Workbook to [his] Amended Initial Disclosures," and instead blames defendant for failing to bring this up to him (Martel. Repl. at 20). This explanation is insufficient to excuse plaintiff.

Normally all factors would weigh in defendant's favor, but given the delay of trial due to coronavirus, the factors weigh less in defendant's favor. Plaintiff will accordingly be allowed to amend again to comply with Rule 26 but must pay all expenses and fees incurred by defendant in following up on the amended disclosures, including a new deposition thereon of plaintiff, the cost of which must be borne by plaintiff. Defendant may apply for the fee and cost award within **63 CALENDAR DAYS** of this order, but must limit the motion to only those fees and costs directly attributable to the amended disclosure. Defendant's motion for summary judgment as to this issue is thus **DENIED**.

**CONCLUSION**

Any evidentiary objections that have not been addressed in this order were not considered by the undersigned in this motion, and are accordingly **DENIED AS MOOT**.

For the reasons stated above, plaintiff's motion for summary judgment is **GRANTED.** Defendant's motion for summary judgment is **DENIED**.

Trial, currently set for July 20, is hereby **VACATED**. The pretrial conference on July 8 is also **VACATED**. A further case management conference to determine a new trial date is **SET** for **OCTOBER 22 AT 11 A.M.**

**IT IS SO ORDERED.**

Dated: June 25, 2020.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE